# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CEDRIC JONES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:16-cv-02631** |
| **v.** | ) | |
| | ) | |
| **GRADY PERRY, Warden,** | ) | |
| | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER

Pending before the Court is a pro se "Motion to be Released Pending Review" filed by Petitioner Cedric Jones.[1] (Doc. No. 210). Petitioner is an inmate of the South Central Correctional Facility in Clifton, Tennessee. He asks to be released on bond pending the Court's decision on his petition for the writ of habeas corpus pursuant to 28 U.S.C § 2254.

By Order entered on May 15, 2020, the Court directed Respondent to respond to Petitioner's Motion. (Doc. No. 212). Respondent filed his response on May 28, 2020. (Doc. No 214), and the matter is now ripe for the Court's review.

## I.    Background

On March 6, 2013, Petitioner was convicted by a Davidson County jury of three counts of aggravated rape, one count of aggravated sexual battery, and one count of aggravated kidnapping of his fourteen-year-old daughter. He was sentenced to a total effective sentence of thirty-seven years in prison. State v. Jones, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513 (Tenn. Crim. App. June 29, 2016), perm. app. denied (Tenn. Sept. 22, 2016). Petitioner appealed, and the

---

[1] There are a number of other motions pending in this case, which the Court will address in due time. The Court expedited review of the instant motion due to Petitioner's request for immediate release based on COVID-19 concerns.

1

Tennessee Court of Criminal Appeals affirmed his conviction and sentence on June 29, 2016. Id. The Tennessee Supreme Court denied his application for permission to appeal on September 22, 2016. Id.

On September 12, 2017, Petitioner filed a pro se motion for post-conviction relief in the Criminal Court of Davidson County, Tennessee. (Doc. No. 75 at 4). On August 1, 2019, the trial court denied Petitioner's motion for post-conviction relief. (Doc. No. 179, Attach. 1). Petitioner did not appeal the denial.

On October 3, 2016, Petitioner filed a pro se petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions and sentence. (Doc. No. 1). On October 25, 2016, Petitioner filed an amended petition for writ of habeas corpus. (Doc. No. 11). On February 14, 2017, Petitioner filed a supplemental for writ of habeas corpus. (Doc. No. 22). On March 6, 2017, Petitioner sought to voluntarily dismiss his case, and the Court dismissed the case without prejudice by Order entered on March 8, 2017. (Doc. No. 27).

On March 20, 2017, Petitioner filed a motion to reopen this action (Doc. No. 31), and Respondent filed a motion to dismiss for failure to exhaust state remedies. (Doc. No. 52). Because Petitioner had not responded to Respondent's pending motion to dismiss, the Court ordered Petitioner to file a response, if desired, specifically addressing whether he was in the process of exhausting his available state court remedies or whether he intended to proceed only on the exhausted claims in the petition. (Doc. No. 72 at 1). Petitioner responded by filing a "motion to amend petition to present only exhausted claims to the Federal District Court or grant a continuance." (Doc. No. 76). On February 18, 2018, the Court granted Petitioner's motion to reopen his case but held the petition in abeyance pending Petitioner's exhaustion of his state court remedies. (Doc. No. 80).

On September 23, 2019, the Court granted Petitioner's motion to reopen his case at the conclusion of his state court proceedings. (Doc. No. 156). In the same Order, the Court granted Petitioner's motion to amend his petition (Doc. No. 148) as a supplement to the original petition. The Court directed Respondent to file an answer, plead or otherwise respond to the amended petition in conformance with Rule 5, Rules — § 2254 Cases, within 30 days of receipt of the Court's Order. (Id. at 2).

Petitioner later filed a document entitled "Supplemental/Amended Petition." (Doc. No. 161). Respondent filed an answer on December 12, 2019. (Doc. No. 180). By Order entered on February 10, 2020, the Court found that, given the many amendments and supplements filed by Petitioner spanning a three-year period, all parties would be best served by designating Petitioner's most recently filed petition—"Supplemental/Amended Petition" filed on October 15, 2019—as the governing petition in this case. (Doc. No. 193 at 4-5). The Court explicitly held that no further amendments or supplements would be permitted. (Id. at 5). The Court permitted Respondent to submit an amended answer to the "Supplemental/Amended Petition" and allowed Petitioner to file a response, if desired, to the amended answer. (Id.)

Petitioner then filed a pro se "Motion to be Released Pending Review" in which he asks to be released on bond pending the Court's decision on his Section 2254 petition. (Doc. No. 210). According to Petitioner, he should be released pending the determination of his federal habeas corpus petition because "he has a meritorious claim in Doc. 161 at ground six" and "extraordinary circumstance[s] exist in this petition via COVID-19." (Doc. No. 210 at 1). Petitioner asserts that he is at high risk of contracting the novel coronavirus disease ("COVID-19") because he is a 51-year-old African-American male who takes medication for high blood pressure and allergies. (Id. at 2). Petitioner alleges that he is unable to socially distance himself at least six feet from his

cellmate while confined in his cell. Further, Petitioner claims that the orders from the Governor of Tennessee and the President of the United States create an exceptional circumstance warranting his release. (Id. at 3). Petitioner requests to be released pending review "on personal recognizance, without surety" and "any other relief allowed by Federal and State law."[2] (Id. at 13).

Respondent opposes Petitioner's motion on grounds that Petitioner has not alleged a substantial claim of law in his habeas petition and the COVID-19 pandemic is not an exceptional circumstance as applied to Petitioner. Respondent points out that the Tennessee Department of Correction (TDOC) has established protocols to protect prisoners and prison officials from contracting and spreading COVID-19. (Doc. No. 214).

## II. Standard

A federal district court has "inherent authority" to grant bond to a habeas petitioner while his petition is under review. Nash v. Eberlin, 437 F.3d 519, 526, n.10 (6th Cir. 2006). But that authority is narrow. "Since a habeas petitioner is appealing a presumptively valid state court conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." Lee v. Jabe, 989 F.2d 869, 871 (6th Cir. 1993). Before and during trial, the accused enjoys a presumption of innocence, and bail is normally granted. Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972). However, the presumption fades upon conviction, with the State acquiring a substantial interest in executing its judgment. Id. This combination of factors dictates a "formidable barrier" for prisoners seeking interim release while they pursue their collateral remedies. Id.

---

[2] Petitioner also requests that "he be refunded the fees for the illegal drug testing that were [sic] not on the trial court's bond ORDER so that he can use it for any purpose he chooses." (Doc. No. 210 at 13). However, this request is not pertinent to Petitioner's instant motion for release pending the review of his federal habeas petition. Any challenges Petitioner wishes to mount concerning his state bond proceedings must be made in state court.

4

"In order to receive bail pending a decision on the merits, prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" Dotson v. Clark, 900 F.2d 77, 79 (6th Cir. 1990) (quoting Aronson v. May, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). Even where the Court concludes that a petition raises a substantial question of law, "[m]erely to find that there is a substantial question is far from enough." Lee, 989 F.2d at 871 (quoting Glynn, 470 F.2d 95, 98).

## III. Analysis

The Court acknowledges Petitioner's concerns and the risks that COVID-19 poses to incarcerated individuals. At the same time, the Court notes that many non-prisoners face similar risks of exposure to COVID-19 due to the nature of their jobs, their caregiving responsibilities, their housing or lack of housing, and their transportation needs. Further, the Court is mindful that Petitioner has been convicted of multiple serious crimes and is serving a lengthy sentence. He is now attacking his convictions in a collateral proceeding. As such, in order to receive bail pending a decision on the merits, Petitioner must be able to show "a substantial claim of law based on the facts surrounding the petition" and the existence of exceptional circumstances making Petitioner's motion "'deserving of special treatment in the interests of justice.'" Dotson, 900 F.2d 77, 79 (quoting Aronson, 85 S. Ct. 3, 5).

First, Petitioner bases his request on Claim 6 of his "Supplemental/Amended Petition" (Doc. No. 161) in which he asserts that he was denied ineffective assistance of trial counsel. Specifically, in Claim 6, Petitioner alleges that trial counsel was ineffective for failing to impeach a witness; to file a written motion for review in the trial court when he failed to appear; to challenge

5

Petitioner's bond; to object to the trial judge coercing Petitioner's guilty plea; and to challenge two of the jurors. (Id. at 51-52).

The parties disagree as to whether Petitioner exhausted this claim and, if he did not, whether he has established cause and prejudice for the default or has demonstrated actual innocence to excuse the default. However, the Court need not resolve this issue now. It is not necessary for the Court to determine at this time whether Claim 6 presents a substantial claim of law because Petitioner has not established the existence of a circumstance making his motion for release pending review of his habeas petition exceptional and deserving of special treatment in the interests of justice.

Petitioner does not assert that he has COVID-19. Petitioner states that he is an African-American male who takes medication for high blood pressure and allergies, which puts him in a high-risk category for contracting COVID-19. He does not provide any additional details regarding his physical condition. Other federal district courts have failed to find an exceptional circumstance warranting pre-decisional release where petitioners suffered from more serious medical conditions during the COVID-19 pandemic. For example, in Jefferson v. Ohio, No. 3:18-cv-779, 2020 WL 1983065 (N.D. Ohio Apr. 27, 2020), the petitioner sought release pending the court's decision on his habeas petition, alleging that he already had tested positive for COVID-19 and suffered from the pre-existing conditions of bronchitis and epilepsy. Id. at *21. The United States District Court for the Northern District of Ohio noted that, "although the Court is very aware of the serious threat to public safety posed by COVID-19," the petitioner "had not demonstrated that his particular circumstances constitute[d] 'exceptional circumstances justifying special treatment in the interests of justice'" because the petitioner's conditions were "not so unusual that they would warrant the extraordinary measure of granting release." Id. at *22. Likewise, in Titus v. Nagy, No. 2:18-cv-

6

11315, 2020 WL 1930059 (E.D. Mich. Apr. 21, 2020), the petitioner asserted that he was at high risk of contracting COVID-19 because he was sixty-eight years old and recently recovered from a month-long respiratory infection. Like Petitioner Jones, he alleged that social distancing was not possible in prison and he requested release on his own recognizance and without a cash bond. Id. at *2. Petitioner Titus, however, also alleged that ninety-three inmates and several staff members at his facility had tested positive for COVID-19. Id. The United States District Court for the Eastern District of Michigan denied Titus's emergency motion for bond concluding that, "even assuming Petitioner had stated a substantial claim in his habeas petition, the contention that he may become ill with COVID-19 at some future time does not create an exceptional circumstance warranting release on bond." Id. at *4. See also Centofanti v. Neven, No. 2:13-cv-01080-JAD-PAL, 2020 WL 2114360, at *2 (D. Nev. May 4, 2020) (finding that no extraordinary circumstances were present for bail where a habeas corpus petitioner had been diagnosed with stage four Hodgkin's lymphoma, received twelve rounds of chemotherapy, suffered from diminished lung capacity, and suffered from a possible undiagnosed heart condition).

Furthermore, Petitioner has not demonstrated that the State of Tennessee is unwilling or incapable of protecting him by taking precautionary measures. TDOC has conducted COVID-19 testing on its employees and over 20,000 inmates. Tenn. Dep't Correction, TDOC and TDH Testing Results for Corrections Employees, https://www.tn.gov/correction/news/2020/4/12/tdoc-and-tdh-testing-results-for-corrections-employees.html (last visited May 28, 2020); Tenn. Dep't Correction, TDOC Inmates COVID-19 Testing, https://www.tn.gov/content/dam/tn/correction/documents/TDOCInmatesCOVID19.pdf (last visited May 28, 2020). In response to the COVID-19 pandemic, TDOC has produced and delivered over 93,000 masks to staff, inmates, county jails, and health care workers. Tenn. Dep't Correction, TDOC Takes Covid-19 Actions for Inmate

Population, https://www.tn.gov/correc-tion/news/2020/4/17/tdoc-takes-covid-19-actions-for-inmate-population.html (last visited May 28, 2020). Additionally, disinfection and safety measures are ongoing at all facilities. Id. TDOC has implemented extensive protocols to ensure the safety of other inmates when an inmate tests positive for COVID-19, which includes immediate isolation of the COVID-19 positive inmate. Tenn. Dep't Correction, Frequently Asked Questions Regarding COVID-19, https://www.tn.gov/correction/frequently-asked-questions-regarding-covid-19.html (last visited May 28, 2020). Further, as of May 28, 2020, 1,588 inmates have been tested at Petitioner's facility, and 0 inmates housed at Petitioner's facility tested positive for COVID-19; 1,509 of the inmates tested negative, and 21 test results were pending. Tenn. Dep't Correction, Documents, https://www.tn.gov/content/dam/tn/correction/documents/TDOCInmatesCOVID19.pdf (last visited May 28, 2020). Petitioner therefore has not shown that he is incarcerated at a facility that would subject him to an unacceptable increased risk of contracting COVID-19.

The Court also takes into consideration Petitioner's prior conduct with respect to bond. When Petitioner's case was bound over to the grand jury, his bond was set at $250,000. Jones, 2016 WL 3621513, at *6. Petitioner filed a motion to reduce bond, which the court granted after a hearing on June 3, 2012. Id. Subsequently, Petitioner was released on bail with the condition that he be placed on GPS monitoring. Id. His trial was originally scheduled for May 14, 2012, but, after removing his electronic monitoring device, Petitioner failed to appear. Id. Petitioner's whereabouts were unknown for four days. Id. After Petitioner was apprehended, the trial court revoked his bond. Id. Petitioner challenged the revocation of his bond on direct appeal, and the state appellate court found that he had waived the issue, having failed to file a motion to review the trial court's decision to revoke his bond in either the trial court or in the appeals court. Id. at *6-7. Petitioner now insists

that he failed to appear because he was sick. (Doc. No. 210 at 4, 6). However, he concedes that he removed his electronic monitoring device, failed to appear, and turned himself in four days later. (Id.)

Finally, in Petitioner's motion, he alleges that the conditions of his confinement violate the Eighth Amendment to the United States Constitution and constitute cruel and unusual punishment. The Court previously has informed Petitioner that his COVID-19 claims relating to his conditions of confinement "are not appropriately raised within this habeas action," and instead, they "must be raised in a federal civil rights action." (Doc. No. 202 at 2). See Luedtke v. Berkebile, 704 F.3d 465, 466 (6th Cir. 2013) (conditions of confinement claims cannot be raised in federal habeas corpus proceedings) (citing Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004)). The Court directed the Clerk to forward Petitioner the form for filing such an action. Any such allegations will not be addressed within this habeas action.

## IV. Conclusion

For all the reasons given above, the Court concludes that, even assuming Petitioner has stated a substantial claim in his habeas petition, Petitioner's circumstances as described do not create an exceptional circumstance warranting release on bond pending a decision on his habeas petition. The Court, therefore, **DENIES** Petitioner's motion to be released pending review. (Doc. No. 210).

IT SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE