UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CEDRIC JONES,** | ) |
| | ) |
|     Petitioner, | ) |
| | ) No. 3:16-cv-02631 |
| v. | ) |
| | ) |
| **GRADY PERRY, Warden,** | ) |
| | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the following pro se Motions filed by Petitioner: "Motion for Default Judgment as to Cedric Jones" (Doc. No. 292); "Motion to be Placed in a Single-Man Cell Pending Review or Be Released" (Doc. No. 298); and "Motion to Vacate and Set Aside Petitioner's Conviction" (Doc. No. 300).[1] Respondent has not responded to these Motions. The Court also will address the most recent letter filed by Petitioner. (Doc. No. 301).

**I.    Motion for Default Judgment (Doc. No. 292)**

Petitioner seeks default judgment against Respondent pursuant to Federal Rule of Civil Procedure 55(b)(2) based on Respondent's failure to respond to Petitioner's "Motion to Quash the Indictment and Void the Petitioner's Conviction" (Doc. No. 292).

A plaintiff must fulfill the procedural requirements of Federal Rule of Civil Procedure 55(a) and seek an entry of default prior to seeking a default judgment pursuant to Federal Rule of Civil Procedure 55(b). See Fed. R. Civ. P. 55; Disney Enters., Inc. v Kathy Farmer, 427 F. Supp.2d 807, 814-15 (E.D. Tenn. 2006) (obtaining a default judgment is a two-step process; once the Clerk

---

[1] There are a number of other motions by Petitioner pending in this case, which the Court will address by separate Order in due time.

has entered a default, the moving party may then seek entry of a default judgment); White v. Parker, No. 1:11-CV-294-TRM-CHS, 2018 WL 1279545, at *3 (E.D. Tenn. Feb. 20, 2018) (citations omitted). Plaintiff has not obtained an entry of default prior to filing the instant motion. Moreover, an entry of default is not appropriate against Respondent under these circumstances. Respondent has not failed to plead or otherwise defend this action.[2] Respondent has been actively defending against this action since 2016. Accordingly, Plaintiff's Motion for Judgment by Default is **DENIED**.

**II.     Motion to be Placed in a Single-Man Cell Pending Review or Be Released (Doc. No. 298)**

Petitioner has filed a motion asking the Court to order that he be placed in a single-man cell or be released pending a decision on his habeas petition. (Doc. No. 298). Petitioner is an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee.

A federal district court has "inherent authority" to grant bond to a habeas petitioner while his petition is under review. Nash v. Eberlin, 437 F.3d 519, 526, n.10 (6th Cir. 2006). But that authority is narrow. "Since a habeas petitioner is appealing a presumptively valid state court conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." Lee v. Jabe, 989 F.2d 869, 871 (6th Cir. 1993). Before and during trial, the accused enjoys a presumption of innocence, and bail is normally granted. Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972). However, the presumption fades upon conviction, with the State acquiring a substantial interest in executing its judgment. Id. This combination of factors dictates a

---

[2] Pursuant to Local Rule 55.01, motions for entry of default under Federal Rule of Civil Procedure 55(a) must be accompanied by an unsworn declaration under penalty of perjury under 28 U.S.C. § 1746 verifying: (i) proof of service; (ii) the opposing party's failure to plead or otherwise defend; (iii) if the opposing party is an individual, that the opposing party is not a minor or incompetent person; and, (iv) if the opposing party is an individual, that the opposing party is not in the military service, as required by 50 U.S.C. § 3931(b)(1).

"formidable barrier" for prisoners seeking interim release while they pursue their collateral remedies. Id.

"In order to receive bail pending a decision on the merits, prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" Dotson v. Clark, 900 F.2d 77, 79 (6th Cir. 1990) (quoting Aronson v. May, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)).  Even where the Court concludes that a petition raises a substantial question of law, "[m]erely to find that there is a substantial question is far from enough." Lee, 989 F.2d at 871 (quoting Glynn, 470 F.2d 95, 98).

Early in the COVID-19 pandemic, Petitioner sought to be released on bond pending the Court's decision on his habeas petition. (Doc. No. 210). By Order entered on June 3, 2020, the Court denied Petitioner's request, finding that, even if Petitioner could show a substantial claim of law based on the facts surrounding the petition, he had not established the existence of a circumstance making his motion for release pending review of his habeas petition exceptional and deserving of special treatment in the interests of justice. (Id. at 6-9). The Court provided three main reasons for its decision: Petitioner did not state that he had COVID-19 or provide any details regarding his physical condition other than he is an African-American man who takes medication for his blood pressure and allergies; Petitioner had not demonstrated that the State of Tennessee was unwilling or incapable of protecting him by taking precautionary measures regarding inmate COVID-19 exposure; and Petitioner's prior conduct with respect to bond weighed against releasing him on bond now because previously while on bond Petitioner had removed his electronic monitoring device, failed to appear, and turned himself in four days later. (Id.)

Now Petitioner again seeks release on bond, stating that he has contracted COVID-19 "and is suffering from the affects [sic] it has on the human body." (Doc. No. 298 at 1). Petitioner alleges that he is tired and weak, experiences low energy and body aches, and suffers from chronic coughing and headaches. (Id. at 3). Petitioner also seeks release on bond because SCCF "has black mold in all of the ventilation systems" since "the warden . . . has not had the air ducts professionally cleaned here in years." (Id.) According to Petitioner, these "dirty air vents" caused and are aggravating Petitioner's chronic cough and upper respiratory infection. (Id.) Petitioner alleges that he is being "forced" to reside with another inmate "in a cell designed for one person" during a pandemic. (Id.)

According to Petitioner, he continues to contract upper respiratory infections for which he "has been to the Doctor many times" because Petitioner must share space with another inmate, along with "the poor ventilation system with second-hand smoke, black mold, and other sick people" who keep making Petitioner sick. (Id.) Petitioner alleges that he currently has an upper respiratory infection that "will not go away." (Id.) Petitioner believes that he "could protect himself better by not being confined in a double-man cell designed for one person." (Id.)

Once again, the Court will assume for the purposes of its analysis that Petitioner has shown "a substantial claim of law based on the facts surrounding the petition." However, "[c]ourts have limited exceptional circumstances warranting release during review 'to situations where (1) the prisoner was gravely ill, (2) the prisoner committed a minor crime and is serving a short sentence, or (3) possibly where there was an extraordinary delay in processing the habeas petition.'" Gideon v. Tregalia, No. 3:21 CV 2087, 2021 WL 6031492, at *3 (N.D. Ohio Dec. 21, 2021) (quoting Blocksom v. Klee, No. 11-cv-14859, 2015 WL 300261, at *4 (E.D. Mich. Jan. 22, 2015)).

This is not a case where Petitioner committed a minor crime and is serving a short sentence. See Gideon, 2021 WL 6031492, at *3 (quoting Blocksom, 2015 WL 300261, at *4)). Petitioner was convicted of committing very serious crimes against his own teenage daughter and is serving a thirty-seven year sentence.

Neither is this a case where there is "'an extraordinary delay in processing the habeas petition.'" Id. Many of the delays occurring in this case have resulted from the numerous filings by Petitioner, including multiple interlocutory appeals denied by the Sixth Circuit.

Petitioner alleges that he has contracted COVID-19, may be at a higher risk of negative COVID-19 outcomes due to his race and high blood pressure, and is experiencing some common symptoms of the virus. However, Petitioner does not allege that he is gravely ill. Indeed, Petitioner appears to be recovering or recovered. He has continued to prepare and mail motions and letters to the Court since filing his Motion to be Placed in a Single-Man Cell. (See Docs. No. 299, 300, and 301). In his most recently filed twelve-page motion dated January 15, 2022, Petitioner does not even mention COVID-19, being sick in any way, or his request to be released on bond or placed in a single-man cell. (See Doc. No. 301 at 1-12).

Other federal district courts have failed to find an exceptional circumstance warranting pre-decisional release where petitioners suffered from similar or more serious medical conditions during the COVID-19 pandemic. For example, in Gideon v. Tregalia, 2021 WL 6031492, the court found that the petitioner's many health conditions—including his age, diabetic status, atrial fibrillation, cardiomegaly, numerous surgeries to correct his spine and ankle, limited mobility, increased risk of worsening disc and nerve disease in his back while in a prison setting, and risk of falling and suffering serious injuries—did not meet the "high bar" of an exceptional circumstance warranting pre-decision release. Id. at *3. Similarly, in Jefferson v. Ohio, No. 3:18-

cv-779, 2020 WL 1983065 (N.D. Ohio Apr. 27, 2020), the petitioner sought release pending the court's decision on his habeas petition, alleging that he had tested positive for COVID-19 and suffered from the pre-existing conditions of bronchitis and epilepsy. Id. at *21. The court found that the petitioner had not shown a substantial claim of law based on the facts. Further, "although the Court is very aware of the serious threat to public safety posed by COVID-19," the petitioner "had not demonstrated this his particular circumstances constitute[d] 'exceptional circumstances justifying special treatment in the interests of justice.'" This is because the petitioner's conditions were "not so unusual that they would warrant the extraordinary measure of granting release." Id. at *22. Likewise, in Centofanti v. Neven, No. 2:13-cv-01080-JAD-PAL, 2020 WL 2114360, at *2 (D. Nev. May 4, 2020), the court found that no extraordinary circumstances were present for bail where a habeas corpus petitioner had been diagnosed with stage four Hodgkin's lymphoma, received twelve rounds of chemotherapy, suffered from diminished lung capacity, and suffered from a possible undiagnosed heart condition. And in Couch v. Trombley, No. 06-CV-15199, 2007 WL 2259110 (E.D. Mich. Aug. 3, 2007), when a petitioner sought release on bond due to health concerns arising from an eye condition, the court denied the motion for bond, finding that the petitioner's condition "[was] not dire nor life-threatening[.]" Id. at *1.

While the Court acknowledges that Petitioner's health concerns are serious, he has not shown them to be dire or life threatening. Cf. Puertas v. Overton, 272 F. Supp.2d 621 (E.D. Mich. 2003) (granting petitioner's release on bond where petitioner presented a substantial claim of law and suffered from life-threatening and insufficiently treated coronary artery disease and bladder cancer); Zaya v. Adducci, No. 20-10921, 2020 WL 2487490, at * (E.D. Mich. May 14, 2020) (converting temporary restraining order into preliminary injunction requiring petitioner's immediate release from custody where petitioner suffered from high blood pressure, diabetes,

asthma, neural foraminal stenosis (requiring the use a wheelchair and a transcutaneous electrical nerve stimulation unit), gout, and was dependent on others to change his diapers and bathe him, despite facility's ability to house petitioner in single-man cell during COVID pandemic).

The Court also takes into consideration Petitioner's prior conduct with respect to bond, which the Court chronicled in a prior Order but finds appropriate to repeat here. When Petitioner's case was bound over to the grand jury, his bond was set at $250,000. State of Tenn. v. Jones, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513, at *6 (Tenn. Crim. App. June 29, 2016). Petitioner filed a motion to reduce bond, which the court granted after a hearing on June 3, 2012. Id. Subsequently, Petitioner was released on bail with the condition that he be placed on GPS monitoring. Id. His trial was originally scheduled for May 14, 2012, but, after removing his electronic monitoring device, Petitioner failed to appear. Id. Petitioner's whereabouts were unknown for four days. Id. After Petitioner was apprehended, the trial court revoked his bond. Id. Petitioner challenged the revocation of his bond on direct appeal, and the state appellate court found that he had waived the issue, having failed to file a motion to review the trial court's decision to revoke his bond in either the trial court or in the appeals court. Id. at *6-7. Petitioner now insists that he failed to appear because he was sick. (Doc. No. 210 at 4, 6). However, he concedes that he removed his electronic monitoring device, failed to appear, and turned himself in four days later. (Id.)

The Court finds that Petitioner has not established an extraordinary circumstance that justifies pre-decision release for him, considering all of the above. This is not the "very unusual case" where a habeas petitioner should be released pending a determination on the merits. As the Sixth Circuit has told us, "[t]here will be few cases where a prisoner will meet this standard." Dotson, 900 F.2d 77, 79.

7

Neither does the Court find that the circumstances described by Petitioner warrant an order from this Court mandating that Petitioner be placed in a single-man cell. Decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive. See Griffin v. Berghuis, 563 F. App'x 411, 417-18 (6th Cir. 2014) (citing Turner v. Safley, 482 U.S. 78, 82 (1987)). In discharging their duty to protect constitutional rights, courts "cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution," nor can they award relief based on considerations that, though they may "reflect an aspiration toward an ideal environment for long-term confinement," "properly are weighed by the legislature and prison administration rather than a court." Rhodes v. Chapman, 452 U.S. 337, 349-352 (1981). The conditions described by Petitioner do not justify judicial intervention into the internal workings of state prison oversight, staffing, and administration at this time. See Kirk v. Parker, No. 3:20-cv-00540, 2020 WL 5039441, at *5 (M.D. Tenn. Aug. 26, 2020).

For all the reasons given above, the Court concludes that, even assuming Petitioner has stated a substantial claim in his habeas petition, Petitioner's circumstances as described do not create an exceptional circumstance warranting release on bond pending a decision on his habeas petition or a court order directing Petitioner's transfer to a single-man cell. The Court, therefore, **DENIES** Petitioner's Motion. (Doc. No. 298).

Finally, in this same Motion (Doc. No. 298), Petitioner also requests "that he be refunded from the trial court for the illegal drug-testing fees to pay the balance of [t]he bond for the amount ($700.00) which was all that he needed to pay to be re-released when he got sick and failed to appear in 2012." (Id. at 3). As the Court previously has explained, any challenges Petitioner wishes

to mount concerning his state bond proceedings must be made in state court. (See Doc. No. 216 at 4 n.2).

III. **"Motion to Vacate and Set Aside Petitioner's Conviction" (Doc. No. 300)**

Petitioner recently filed a "Motion to Vacate and Set Aside Petitioner's Conviction" which he signed and dated January 4, 2022. (Doc. No. 300). The Motion challenges the same judgment as Docket No. 161. By Memorandum Opinion and Order entered on February 10, 2020, the Court designated Petitioner's "Supplemental/Amended Petition" (Doc. No. 161) as the governing petition in this case. (Doc. No. 193). Therein, the Court also found that no further amendments or supplements to the petition would be permitted. (Id. at 5). Petitioner's most recently filed Motion to Vacate and Set Aside his conviction will not be permitted as an attempt by Petitioner to amend or supplement his governing petition. Neither can it replace the governing petition to which Respondent already has filed an Answer. Petitioner's Motion (Doc. No. 300), therefore, is **DENIED AS MOOT**.

Petitioner's "Supplemental/Amended Petition" challenging a judgment of the Davidson County Criminal Court of three counts of aggravated rape, one count of aggravated sexual battery, and one count of aggravated kidnapping of Petitioner's fourteen-year-old daughter (Doc. No. 161) remains pending before the Court.

IV. **Petitioner's January 24, 2022 Letter (Doc. No. 301)**

Petitioner submitted a letter dated January 15, 2022, in which he takes issue, once again, with the title used for one of his motions on the docket. Specifically, Petitioner complains about a case administrator titling Docket No. 294 "Motion" rather than "Motion to Take Judicial Notice Concerning a Discrepancy on the Face of the Petitioner's Indictment," as Petitioner himself titled the filing. (Doc. No. 301 at 2).

Although the shorter title does not prejudice Petitioner in any way, the Court acknowledges that Petitioner did, in fact, title his motion as "Motion to Take Judicial Notice Concerning a Discrepancy on the Face of the Petitioner's Indictment." Petitioner states that a more descriptive title enables him to better keep track of the motions he has filed. A review of the docket reveals that the title of the motion already has been changed on the docket. Therefore, no action by the Court is necessary.

Petitioner is advised, however, that the Clerk of Court ultimately determines how pleadings and motions will be docketed on the Court's CM/ECF system and, at times, submissions by pro se parties will be renamed if doing so accurately reflects the pro se litigant's intentions without causing any prejudice to the pro se litigant.

IT SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE