# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CEDRIC JONES,** | ) | |
| **#519021,** | ) | |
| | ) | |
| **Petitioner,** | ) | **No. 3:16-cv-02631** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GRADY PERRY, Warden,** | ) | |
| | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Petitioner Cedric Jones, an inmate of the Whiteville Correctional Facility, Tennessee, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2013 conviction and sentence for three counts of aggravated rape, one count of aggravated sexual battery, and one count of aggravated kidnapping for which he currently is serving a term of imprisonment of thirty-seven years in the Tennessee Department of Correction. (Doc. No. 161).[1]

Presently pending before the Court is the Warden's Answer to the habeas petition in which he asks the Court to dismiss the petition. (Doc. No. 204). Petitioner filed a Response to the Answer. (Doc. No. 207).

The petition is ripe for review, and this Court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the Court finds that an evidentiary hearing is not needed, and Petitioner is not entitled to relief. See Christian v. Hoffner, No. 17-2105, 2018 WL 4489140, at *2 (6th Cir. May 8, 2018) (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007))

---

[1] By Memorandum Opinion and Order, the Court designated Petitioner's "Supplemental/Amended Petition" filed on October 15, 2019, as the governing petition in this case. (Doc. No. 193). Herein, the Court refers to that petition as "the petition" or Petitioner's "Supplemental/Amended Petition."

Case 3:16-cv-02631   Document 332   Filed 01/27/23   Page 1 of 43 PageID #: 6361

("A district court is not required to hold an evidentiary hearing if the record 'precludes habeas relief.'"). The petition therefore will be denied, and this action will be dismissed.

## I. Procedural History

On March 6, 2013, a Davidson County Tennessee jury convicted Petitioner of three counts of aggravated rape, one count of aggravated sexual battery, and one count of aggravated kidnapping of his fourteen-year-old daughter. He was sentenced to a total effective sentence of thirty-seven years in the Tennessee Department of Correction. State v. Jones, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513 (Tenn. Crim. App. June 29, 2016), perm. app. denied (Tenn. Sept. 22, 2016).

On direct appeal, the Tennessee Court of Criminal Appeals (TCCA) affirmed Petitioner's conviction and sentence on June 29, 2016. Id. The Tennessee Supreme Court denied Petitioner's application for discretionary review on September 22, 2016. Id.

On October 3, 2016, Petitioner filed a pro se petition for a writ of habeas corpus in this Court. (Doc. No. 1). On March 8, 2017, Petitioner sought to voluntarily dismiss this case, and the Court dismissed the case without prejudice. (Doc. No. 27). On March 20, 2017, Petitioner sought to reopen this case. (Doc. No. 31). On April 4, 2017, the Court ordered Respondent to respond to Petitioner's request and, if appropriate, to his petition. (Doc. No. 39). On May 8, 2017, Respondent filed a Motion to Dismiss for failure to exhaust state remedies. (Doc. No. 52). On February 18, 2018, the Court granted Petitioner's Motion to Reopen his case, but held his petition in abeyance pending Petitioner's exhaustion of his state court remedies. (Doc. No. 80).

On September 12, 2017, Petitioner filed a timely pro se petition for state post-conviction relief. (Doc. No. 75 at PageID# 4). The post-conviction court denied relief. (Doc. No. 179-1 at PageID# 3619-66). Petitioner did not appeal the denial.[2]

On September 23, 2019, the Court granted Petitioner's Motion to Reopen this case based on the conclusion of his state-court proceedings. (Doc. No. 156). The Court further granted Petitioner's Motion to Amend, concluding that the Amended Petition (Doc. No. 148) should be allowed as a supplement to the original petition. (Doc. No. 156).

On December 19, 2019, Respondent filed an Answer (Doc. No. 180) addressing the four claims in the original petition (Doc. No. 1) as well as the numerous claims raised in Petitioner's Amended Petition. (Doc No. 148). On February 10, 2020, following Petitioner's Objection to Respondent's Answer, the Court designated Petitioner's Supplemental/Amended Petition (Doc. No. 161) as the governing petition in this case and ordered Respondent to respond to it. (Doc. No. 193). Respondent subsequently filed an Answer to Petitioner's Supplemental/Amended Petition. (Doc. No. 204). Petitioner filed a Response to that Answer. (Doc. No. 207).

In his Supplemental/Amended Petition, Petitioner asserts thirteen claims, some of which have sub-claims, as noted below:[3]

(1) Whether the trial court committed significant judicial errors against Petitioner
Sub-Claims: 1) Petitioner was denied his right to an impartial judge; 2) the trial court improperly amended Petitioner's indictment; 3) Petitioner was denied the right to self-representation; 4) Petitioner's right to a fair trial was violated; 5) the state committed discovery violations; and 6) the trial court gave erroneous jury instructions (Doc. No. 161 at PageID# 2176-81);

---

[2] In his Supplemental/Amended petition, Petitioner states that "the court of criminal appeals denied the petitioner's appeals, and interlocutory appeals" related to his post-conviction petition. (Doc. No. 161 at PageID# 2148). Respondent, however, maintains that Petitioner did not appeal from the denial of his petition for post-conviction relief (see Doc. No. 204 at PageID# 3905), and the Court has found no records thereof. Thus, the Court finds that the Petitioner did not appeal the denial of his post-conviction petition.

[3] Petitioner does not clearly delineate his sub-claims. Herein, for ease of reference, the Court adopts Respondent's approach to numbering Petitioner's sub-claims.

(2)     Whether Petitioner received ineffective assistance of direct appeal counsel (Id. at PageID# 2182);

(3)     Whether the Tennessee Court of Criminal Appeals violated Petitioner's 5th and 14th Amendment rights (Id. at PageID# 2183);

(4)     Whether the Supreme Court of Tennessee violated Petitioner's First, Fifth, and Fourteenth Amendment rights (Id. at Page ID# 2184);

(5)     Whether the state committed prosecutorial misconduct (Id. at Page ID# 2185-88);

(6)     Whether Petitioner was denied effective assistance of trial counsel
Sub-Claims: 1) failing to impeach a witness; 2) failing to file a written motion for review in the trial court when he failed to appear; 3) failing to challenge Petitioner's bond; 4) failing to object to the trial judge coercing Petitioner's guilty plea; 5) failing to challenge two of the jurors (Id. at PageID# 2189-90); and 6) failing to obtain or retain Petitioner's preliminary hearing transcript[4]

(7)     Whether the trial court committed structural errors against Petitioner
Sub-Claims: 1) trial errors occurred during the presentation of the case to the jury; 2) deprivation of counsel and a biased judge; 3) denial of effective assistance of counsel; 4) trial counsel has a conflict of interest; 5) denial of the right to self-representation; 6) denial of the right to an impartial judge; 7) denial of the full protection of the reasonable doubt standard at trial; 8) Petitioner's wife submitted 'Exhibit W' as a fraud; 9) the trial judge ignored Petitioner's Exhibit 3; 10) Exhibit U was filed when Petitioner wanted additional time because he got sick (Id. at PageID# 2191-94).

(8)     Whether the trial court and state committed crimes against Petitioner
Sub-Claims: 1) official misconduct; 2) official oppression; and 3) criminal conspiracy (Id. at Page ID# 2195-98);

(9)     Whether Petitioner's Double Jeopardy rights were violated (Id. at PageID# 2199-2200);

(10)    Whether Petitioner's speedy trial rights were violated (Id. at Page ID# 2201-07);

(11)    Whether Petitioner's due process rights were violated by the trial court's alleged bias against him (Id. at PageID# 2208);

---

[4] Respondent did not include Claim 6, Sub-Claim 6 in his Answer, but the Court finds that Petitioner included the sub-claim in his Supplemental/Amended petition (see Doc. No. 161 at PageID# 2190-91); thus, the Court lists it herein.

4

(12)    Whether Petitioner's Fourth Amendment rights were violated by an alleged illegal search and seizure (<u>Id.</u> at PageID# 2209); and

(13)    Whether Petitioner's indictment is "void." (<u>Id.</u> at PageID# 2210).

## II.  Summary of the Evidence

Petitioner's state criminal case arose from Petitioner's interactions with his fourteen-year-old daughter beginning on the afternoon of March 1, 2010. <u>State v. Jones</u>, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513, at *1 (Tenn. Crim. App. June 29, 2016). The Tennessee Court of Criminal Appeals summarized the proof adduced at Petitioner's jury trial as follows:

> After the victim came home from school on March 1, 2010, Defendant told her that he was going to take her to get her nails done. After they left the house, Defendant drove the victim to a storage unit that he used as a recording studio. The victim asked what they were doing there, and Defendant did not respond. The victim sat on a futon inside the storage unit while Defendant played music on his computer. The victim "noticed the songs he was playing were really depressing." The victim described Defendant as "acting really depressed" and "upset." Defendant told the victim that he wanted to kill himself. The victim believed him and started crying. After talking for about an hour, Defendant went to the car and retrieved a small case. Defendant opened the case and showed the victim his gun. Defendant wanted the victim to know the gun was real, so he placed it on her thigh along with the bullets. Defendant told the victim that he was going to use the gun on himself and not her.
>
> The victim tried to talk Defendant out of killing himself, promising not to tell anyone about his suicide threat so that he would not be sent to a mental institution. After several hours of crying and pleading, the victim developed a migraine headache. Defendant went to get the victim some medicine and told her not to leave or he would shoot himself. When Defendant returned, he instructed the victim to take the medicine with a wine cooler he brought to her. The victim told Defendant that she did not want to drink. Defendant placed the gun to his head and threatened to "shoot his brains out" if she did not drink the wine cooler. Defendant made the victim drink four or six bottles of wine coolers. After threatening to shoot himself if she left, Defendant went out to the car and retrieved a larger bottle of alcohol. When the victim refused to drink it, Defendant stated "if you hate me so much, then why don't you just pull the trigger." Defendant then placed the gun in his mouth and put the victim's hand on the trigger. The victim knew the gun was loaded, so she pulled her hand away and agreed to drink the larger bottle. The victim started "feeling sick and dizzy."
>
> The victim asked Defendant to take her home so they could watch a movie, and Defendant agreed. However, when they got to the house, Defendant told the victim

that he set an alarm on the car and that he would shoot himself if she got out. The victim was concerned about Defendant shooting himself in front of her siblings, so she stayed in the car. Defendant returned to the car with a blanket and a laptop. They went back to the storage unit, laid down on the futon, and watched a movie on the laptop. The victim eventually fell asleep.

When the victim awoke, it was very late and dark. The victim noticed that her legs felt wet, and Defendant told her that she urinated on herself. Defendant then got on top of the victim. When the victim asked what he was doing, Defendant stated, "Shut up. You're going to let me do this." Defendant lifted the victim's shirt and started kissing and licking her breasts. The victim was confused and crying. She tried to get up, but Defendant held her down. Defendant then took her pants off. The victim started screaming, and Defendant put his hand over the victim's nose and mouth to the point that she couldn't breathe. When Defendant finally let go, the victim asked if he was going to kill her. Defendant told her "no . . . just do what I say."

Defendant inserted his fingers into the victim's vagina, "pulling them in and out." The victim cried and told Defendant that it hurt, and Defendant told her that it did not. Defendant then asked if she had "ever been eaten out before" and told her that she was "fixing to find out what that feels like." Defendant put his mouth on the victim's vagina and started licking it. Defendant asked the victim if she knew what an orgasm was and told her that he wanted her to have one in his mouth. Defendant pulled down his pants and inserted his penis in the victim's vagina. Defendant then told the victim to get on top of him, and he inserted his penis in her vagina again. Defendant then turned on the lights and told the victim to bend over so that he could look at her body. Defendant licked his fingers and rubbed them against the victim's vagina. Defendant then said, "It's your turn," and the victim knew what he meant. Defendant inserted his penis into the victim's mouth. Defendant ejaculated in the victim's mouth and told her that he wanted her to swallow it. The victim spit some of it out on the futon but swallowed some of it.

Defendant got dressed and went out to the car, telling the victim that he would kill himself if she left. The victim decided to try to escape. She lifted the garage-style door of the storage unit and rolled under it. She then ran to a different door from the one the Defendant was using. She ran up a hill and tried to climb the fence. Defendant ran after her and screamed her name. Defendant grabbed the victim's arm, and the victim fell off the fence. Defendant said, "Did you think you could run from me," and took the victim to the car. Defendant then told the victim he was going to take her home and "acted like nothing happened, like he just—like he didn't do anything."

Defendant took a longer route driving back to the house. Defendant made comments to the victim such as, "I know you liked it," "I could feel you getting into it," "you taste good," and "you're better than your mom was." Defendant told the victim that he had planned all of it and that on several occasions prior to this

incident, he had touched her while she slept. The victim told Defendant that she felt sick and then threw up outside the window of the car. Defendant showed the victim a letter to his family that was on his laptop; the victim did not read it but remembered seeing a paragraph where Defendant stated that "he did some things involving [the victim] that he wasn't proud of." Defendant also told the victim that this was the last time she would see him and tried to give her a credit card.

Defendant and the victim returned home around 7:00 a.m. on March 2, 2010. The victim ran inside the house, woke up her sister, and told her, "Dad just raped me." They used their brother's phone to call their mother, who was living in Iowa, and their mother called the police. The victim took a shower before the police arrived. The victim told the police what happened and gave them the clothes she was wearing. She told the police that she did not know where Defendant was and that he had a gun and was threatening to kill himself. The victim then went to the hospital for an exam.

On cross-examination, the victim admitted that Defendant never pointed the gun directly at her and that he only threatened to use it on himself. The victim also testified that the storage locker could not be locked from the inside. The victim testified that she and Defendant drank four small bottles of alcohol and one large bottle. She testified that the alcohol made her feel light-headed but that she was not intoxicated.

Several police officers from Davidson and Rutherford County testified about the effort to locate Defendant after this incident. The officers were advised that Defendant was armed and that he was threatening to kill himself. Defendant was located at a McDonald's restaurant in La Vergne. Defendant showed the officers the unloaded gun in the trunk of his car and the magazine in the glove compartment. Other officers responded to the storage unit to gather evidence. They collected a blanket, a pillow, a pair of men's underwear, a washcloth, a pistol magazine, a pair of handcuffs, and several liquor bottles from the storage unit. Officers also obtained video surveillance of the storage unit facility as well as a log showing entries and exits through the secured gate.

Detective Robert Carrigan of the Metropolitan Nashville Police Department was the lead detective on the case. He secured a search warrant for the storage facility, supervised the collection of evidence, and reviewed the surveillance footage. Several still photographs from the surveillance video were displayed to the jury, showing Defendant entering and exiting the storage facility several times during the evening of March 1 and the early morning hours of March 2, 2010. In one image, time-stamped 3:58 a.m., a female passenger can be seen in the back of Defendant's car while he is exiting the storage facility. Detective Carrigan also obtained a search warrant for the collection of Defendant's DNA and swabs from his body.

Hollye Gallion, a nurse practitioner and clinical director at Our Kids' Center, testified as an expert in the field of pediatric nursing and forensic examination. Ms. Gallion did not conduct the forensic examination of the victim but had reviewed the medical record. The record reflected that a swab from the victim's vagina did not show the presence of sperm. The victim also did not show any signs of injury to her genital area. Ms. Gallion explained that a lack of injury is not uncommon due to the elasticity of the area. A blood alcohol test was conducted on the victim, which came back negative.

Chad Johnson, a forensic scientist with the Tennessee Bureau of Investigation, testified as an expert in the field of serology and DNA testing. Agent Johnson analyzed swabs taken from Defendant's and the victim's bodies. Saliva was found on the swabs taken from Defendant's penis; DNA on the swab indicated that the saliva came from a female, but the sample was either too degraded or insufficient to obtain a genetic match. Saliva was also found on the vaginal swabs taken from the victim, but the DNA only revealed a partial profile consistent with the victim. Semen was not detected on either the victim's oral or vaginal swabs. Two pairs of men's underwear were also tested, both of which revealed a mixture of Defendant's and the victim's DNA. The victim and Defendant were equal contributors on the pair recovered from Defendant at the hospital, while the victim was the major contributor on the pair found in the storage unit. Agent Johnson testified that the TBI did not test all of the items submitted, including the futon cover and blanket.

For the election of offenses, the State elected to charge in Count One, Defendant's digital penetration of the victim's vagina; in Count Two, Defendant's performing cunniligus on the victim; in Count Three, Defendant's penile penetration of the victim's vagina; and in Count Four, Defendant's penile penetration of the victim's mouth. Defendant chose not to testify or put on any additional proof.

Defendant was convicted of the lesser-included offense of aggravated sexual battery in Count One and was convicted as charged on the remaining counts. The jury imposed fines totaling $200,000. After a sentencing hearing, Defendant was sentenced to twenty-five years on each count of aggravated rape and twelve years for aggravated sexual battery, to run concurrently with one another. He was sentenced to an additional twelve years for aggravated kidnapping, which was ordered to be served consecutively to the other counts, for a total effective sentence of thirty-seven years to be served at 100% in the Tennessee Department of Correction.

On May 7, 2013, trial counsel filed a timely motion for new trial as well as a motion to withdraw. The trial court granted the motion to withdraw and granted Defendant's request to proceed pro se, appointing appellate counsel to serve as "elbow" counsel. The trial court held several status hearings over the course of a year to assist Defendant in preparing his motion for new trial. At a status hearing on June 6, 2014, the trial court consolidated several pro se pleadings filed by Defendant in different courts and set a date for the hearing on the motion for new

trial. Subsequently, Defendant filed a document with the trial court indicating his desire to be represented by appellate counsel, who was then appointed by the trial court. Appellate counsel filed a motion for new trial on July 9, 2014, and an amended motion for new trial on July 30, 2014. After a hearing, the trial court denied Defendant's motion for new trial by written order on September 24, 2014. On May 1, 2015, this Court entered an order allowing Defendant to late-file his notice of appeal, which was subsequently filed on May 14, 2015.

State v. Jones, No. M2015-00720-CCA-R3-CD, 2016 WL 3621513, at *1-4 (Tenn. Crim. App. June 29, 2016).

### III. Standard of Review

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." Woodford v. Garceau, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." Burt v. Titlow, 571 U.S. 12, 19 (2013). The AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Id.

One of the AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S .C. § 2254(d). Under the AEDPA, the court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

9

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" <u>Hill v. Curtin</u>, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Id.</u> (quoting <u>Harris v. Haeberlin</u>, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." <u>Id.</u> (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." <u>Young v. Hofbauer</u>, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." <u>Pouncy v. Palmer</u>, 846 F.3d 144, 158 (6th Cir. 2017) (quoting <u>Matthews v. Ishee</u>, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." <u>Rice v. White</u>, 660 F.3d 242, 250 (6th Cir. 2011) (citing <u>Byrd v. Workman</u>, 645 F.3d 1159, 1172 (10th Cir. 2011)). As the Supreme Court has

advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams, 529 U.S. at 410). Review under § 2254(d) (1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (citation omitted); Gray v. Netherland, 518 U.S. 152, 162-63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. See Picard v. Connor, 404 U.S. 270, 275 (1971); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

Claims that are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." Alley v. Bell, 307 F.3d 380, 388 (6th Cir. 2002). "In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the

11

lack of review." Id. at 386. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. Lucas v. O'Dea, 179 F.3d 412, 418 (6th Cir. 1999) (citing Coleman v. Thompson, 501 U.S. 722, 754 (1991)).

A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. Id.

Constitutionally ineffective assistance of trial or appellate counsel may constitute cause. Murray, 477 U.S. at 488-89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. Id. If the ineffective assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

Petitioners in Tennessee also can establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial review post-conviction proceedings. See Martinez v. Ryan, 566 U.S. 1, 5-6 (2012) (creating an exception to Coleman where state law prohibits ineffective assistance claims on direct appeal); Trevino v. Thaler, 569 U.S. 413, 429 (2013) (extending Martinez to states with procedural frameworks that make meaningful opportunity to raise ineffective assistance claim on direct appeal unlikely); Sutton v. Carpenter, 745 F.3d 787, 792 (6th Cir. 2014) (holding that Martinez and Trevino apply in Tennessee). The

Supreme Court's creation in Martinez of a narrow exception to the procedural default bar stemmed from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." Martinez, 566 U.S. at 13. In other words, Martinez requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." See id. at 13-15. Importantly, Martinez did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in Coleman.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." Perkins v. LeCureux, 58 F.3d 214, 219 (6th Cir. 1995) (quoting United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court also has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. Dretke v. Haley, 541 U.S. 386, 392 (2004) (citing Murray, 477 U.S. at 496).

With these principles in mind, the Court will turn to the examination of the claims raised in Jones's Supplemental/Amended Petition for habeas relief.

## IV. Analysis

Petitioner is not entitled to relief under Section 2254 because his claims fail to comply with Habeas Rules, are without merit, or are procedurally defaulted without sufficient cause. The Court will address each category of claims in turn.

### A. Claims That Fail to Comply with Habeas Rules

In Claim 4, Petitioner alleges that the Tennessee Supreme Court violated his First, Fifth, and Fourteenth Amendment rights under the United States and Tennessee Constitutions. (Doc. No. 161 at PageID# 2184).

Besides quoting the texts of the cited Amendments, Petitioner provides no additional information to explain and support his claim. Instead, Petitioner states that Ground Four alleges the "[s]ame as alleged in Original 'Amended' writ of federal habeas corpus at Ground Four" Buried inside Doc. #33." (Doc. No. 161 at PageID# 2184). Petitioner does not direct the Court to any particular page or portion of his sixty-three-page filing. However, the Court has notified Petitioner previously (see Doc. No. 193 at PageID# 3812 at n.1) that it does not act upon information that is "buried inside" another document. Moreover, the referenced filing (Doc. No. 33), titled "Judicial Notice of Filings and Exhaustion Law" by Petitioner, precedes the filing of Plaintiff's Supplemental/Amended petition by over two years.

In its Order entered on February 10, 2020, the Court clearly designated Petitioner's most recently filed petition, the "Supplemental/Amended Petition" filed on October 15, 2019, as the governing petition in this case, pointing out that "it will be much easier for Respondent to respond to a single petition rather than responding to piece-meal claims made over the course of multiple filings." (Doc. No. 193 at PageID# 3812 & n.1). Thus, the Court draws its information about Petitioner's claims from that petition, not from the many extraneous filings such as Docket No. 33 by Petitioner over the course of this litigation.

14

A discrete set of Rules governs federal habeas proceedings launched by state prisoners. Mayle v. Felix, 545 U.S. 644, 654 (2005). Habeas Rule 2(c) provides that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." McFarland v. Scott, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring and dissenting) ("[T]he habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims."). Rule 2 is "more demanding" than Federal Rule of Civil Procedure 8(a), which provides that in "ordinary civil proceedings, a complaint need only provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Mayle, 545 U.S. at 655 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal. See Creech v. Taylor, No. 13-165-HRW, 2013 WL 6044359, at *2 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support"); Morris v. Motley, 2007 WL 3171538, at *1 (W.D. Ky. Oct 26, 2007) (dismissing Section 2254 petition lacking factual allegations or other specifics); Cook v. Crews, 2008 WL 4499993, at *4 (W.D. Ky. Oct. 1, 2008) (dismissing claim in Section 2254 petition because the petition "contains no specific allegations . . . .").

In the section of his petition devoted to this claim, Petitioner does not set forth any facts to support his allegation that the Tennessee Supreme Court violated his Constitutional rights. Consequently, Petitioner has failed to properly plead this claim. The Court leniently construes pro se pleadings but that liberality "does not require a court to conjure allegations on a litigant's behalf." Erwin v. Edwards, 22 F. App'x 579, 580 (6th Cir. 2001). Dismissal of Claim 4, therefore, is appropriate under Habeas Rule 2.

15

**B. Exhausted Claims**

Next, the Court turns to Petitioner's exhausted claims. They are 1) Claim 1, Sub-Claim 1: whether Petitioner was denied his right to an impartial judge; 2) Claim 1, Sub-Claim 3: whether Petitioner was denied the right to self-representation; 3) Claim 7, Sub-Claim 8, whether the trial court committed "structural errors" by admitting an email purportedly written by the victim; and and, arguably, 4) Claim 11: whether Petitioner's due process rights were violated by the trial court's alleged bias against him. The TCCA's resolution of these claims was not unreasonable.

**1.     Claim 1, Sub-Claim 1: whether Petitioner was denied his right to an impartial judge**

Petitioner alleges that he was denied his right to an impartial judge at trial. (Doc. No. 161 at PageID# 2176). He alleges that state trial judge Cheryl Blackburn demonstrated her partiality in several ways, including testifying as a witness against Petitioner during his trial, directing the court reporter to exclude certain information from the official trial transcript, sentencing Petitioner after his conviction rather than letting the jurors impose his punishment, and leading Petitioner "to believe that no remedy existed for the grounds he raised in his pro se post-conviction [petition]." (Id.)

Throughout his trial court proceedings, Petitioner filed several motions to recuse the trial judge. Jones, 2016 WL 3621513, at *7. As recounted by the TCCA:

> The first, dated February 25, 2013, was filed by Defendant through trial counsel. As grounds, Defendant cited a civil action in federal court that he had filed against the trial judge. Defendant's federal complaint was based on the trial court's rulings during his earlier bond proceedings. The trial court filed a detailed order denying the motion on February 26, 2013. The trial court noted that Defendant's case had been pending since 2010, that he had been represented by four different attorneys, that his trial date had been continued twice, and that Defendant's motion was filed approximately one week before the latest trial date. The trial court determined that the motion to recuse was neither timely filed nor meritorious. Defendant filed a pro se petition for an interlocutory appeal, which was denied by this Court on the ground that Defendant was not permitted to file an appeal pro se while

simultaneously being represented by counsel. See State v. Cedric Jones, No. M2013-00661-CCA-10B-CD (Tenn. Crim. App. Mar. 20, 2013) (order).

Defendant, acting pro se, filed further motions after his trial. Defendant filed a second motion to recuse and an amended motion to recuse in July 2013, which were denied by the trial court on July 16, 2013. Defendant did not seek an appeal of that order in this Court. On November 20, 2013, Defendant filed a motion challenging the trial court's jurisdiction. The trial court denied the motion on November 22, 2013, and directed Defendant to raise any issues in his motion for new trial. Defendant again did not seek an appeal in this Court.

The third motion to recuse was filed on December 12, 2013, and was denied by the trial court "for the same reasons articulated in the previous orders." Defendant appealed the trial court's ruling to this Court. See State v. Cedric Jones, No. M2013-02831-CCA-T10B-CO (Tenn. Crim. App. Jan. 16, 2014) (order). This Court entered an order denying Defendant's appeal on the procedural ground that Defendant failed to attach all relevant trial court orders for an adequate de novo review. Furthermore, this Court addressed the merits of Defendant's appeal, finding that he was "merely unsatisfied with some of the trial court's rulings." Id. Defendant appealed this Court's decision to the Tennessee Supreme Court, which denied his application for permission to appeal. See State v. Cedric Jones, No. M2013-02831-SC-A10B-CO (Tenn. May 19, 2014) (order).

Id. at *7-8.

On direct appeal, Petitioner again argued that Judge Blackburn should have recused. Id. In reviewing Petitioner's claim, the TCCA began by noting that the right to a fair trial before an impartial tribunal is a fundamental constitutional right, citing State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002). Jones, 2016 WL 3621513, at *8. The TCCA also noted that a judge should grant a motion to recuse "when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. Whether a judge should recuse himself or herself from a legal proceeding, the TCCA reminded, "rests within the sound discretion of the judge and will not be reversed on an appeal 'unless clear abuse appears on the face of the record.'" Id. (quoting State v. Reid, 213 S.W.3d 792, 815 (Tenn. 2006).

The TCCA denied relief on Petitioner's judicial bias claim on three alternative bases. First, the court held that because Petitioner had filed a lawsuit against the trial judge was an insufficient ground to establish bias. This is true because, "[t]o hold otherwise  would mean that a defendant [like Petitioner] could automatically disqualify a judge by filing a frivolous suit, inviting additional frivolous litigation, manipulation of the judicial system and forum shopping." Id.  (citing State v. Parsons, 437 S.W.3d 457, 483 n.18 (Tenn. Crim. App. 2011)). Second, the TCCA  criticized Petitioner for waiting almost two years after the bond proceedings to file his first motion to recuse, filing it the week before the scheduled trial date, and for filing his second and third motions to recuse several months after the trial. The TCCA noted that Tennessee courts "frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" Id. (quoting Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct. App.1998) (quoting Holmes v. Eason, 76 Tenn. 754, 757 (1882)).  Finally, the TCCA found that Petitioner had failed to include the transcripts of the bond proceedings that form the basis of his motions to recuse which, under Tennessee law, precluded the court's review of the issue. Id. (citing State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993) (citing State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); Tenn. R. App. P. 24(b)).

The decision of the TCCA was not an unreasonable application of the facts or contrary to law. Further, the state courts' determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, see 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted. This sub-claim will be dismissed.

2. **Claim 1, Sub-Claim 3: whether the trial court denied Petitioner the right to self-representation**

Petitioner alleges that the trial judge denied Petitioner "the right of self-representation." (Doc. No. 161 at PageID# 2176). According to Petitioner, he asked to represent himself on the eve of trial and the trial judge refused.

Petitioner raised this claim on direct appeal, arguing the trial court erred when it denied his request to represent himself at trial. <u>Jones</u>, 2016 WL 3621513, at *9. Petitioner alleged "that the trial court's finding that his request was merely a delay tactic is not supported by the record." <u>Id.</u> The State argued that the issue should be waived because Petitioner had failed to provide an adequate appellate record. <u>Id.</u>

The TCCA agreed with the State, pointing to "the only reference to this issue" in the appellate court record, a reference which appeared in trial court's order denying Petitioner's motion for new trial. <u>Id.</u> Therein, the trial court addressed the issue as follows:

> Defendant requested to proceed pro se on the Friday before his trial. This Court found that it was too late for him to assert this request and that he was doing so as a delay tactic. This Court incorporates its reasoning made from the bench during the March 1, 2013 pre-trial status [hearing]. The Court finds no basis to grant a new trial as to this claim.

<u>Id.</u> The TCCA noted that the appellate record did not contain either Petitioner's initial request to represent himself at trial or a transcript of the March 1, 2013 hearing when the trial court ruled on the matter. <u>Id.</u>

Because a defendant must waive his right to counsel in writing, this writing must be included in the record, and there was no such writing in the appellate record, the TCCA found that it had "no way of knowing whether Defendant's assertion of his right to represent himself met any

19

of the above requirements." Id. (citing State v. Hester, 324 S.W.3d 1, 33 (Tenn. 2010)[5]). Without the transcript of the March 1, 2013 hearing or Petitioner's written waiver of his right to counsel in the record, the TCCA found that it must presume that the trial court was correct when it ruled that Petitioner's request, made three days before the scheduled trial date, "was merely a delay tactic." Id.

Petitioner fails to explain why the TCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner instead insists that the trial judge conspired with the prosecution to "'fabricate a phony transcript'" of the March 1, 2013 proceedings in an attempt "to pervert the truth of what transpired in her own court and who's to say she has[n't] been doing this numerous times for many cases of defendant[]s and keeping it a secret so she'd get re-elected." (Doc. No. 161 at PageID# 2176) (emphasis in original). Petitioner does not provide any evidence in support of his allegations.

Consequently, the Court finds that Petitioner has not shown that he is entitled to relief on this claim because the TCCA's determination was not contrary to law. Neither was the TCCA's determination based on an unreasonable determination of the facts or an unreasonable application of the law to those facts. Further, the state court's determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, see 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted. This claim is without merit and will be dismissed.

---

[5] The Jones decision cites to page 3031 of the Hester decision. There is no page 3031. It appears that this page number is a typographical error, and the Jones court intended to cite to page 33 of the Hester decision, the portion of the decision discussing the court's review of the record in determining whether Hester should be permitted to represent himself.

3. **Claim 7, Sub-Claim 8: whether the trial court committed "structural errors" by permitting the admission of an email purportedly written by the victim**

In Claim 7, Sub-Claim 8, Petitioner alleges that the trial court committed "structural errors" against Petitioner, specifically that the court permitted the admission of "Exhibit W" into evidence, an email purportedly written by the victim. (Doc. No. 161 at PageID# 2191, 2194). Petitioner contends that his then-wife, Angel Jones—not the victim—sent this exhibit to the Court "out of spite because [Cedric and Angel Jones] were going through a divorce at the time." (Id. at PageID# 2194). Petitioner points out that the email was sent from his then-wife's email account. (Id.)

During Petitioner's sentencing hearing, the prosecutor informed the trial court that she had received an email sent from the victim's mother's email account that stated it was written by the victim. Jones, 2016 WL 3621513, at *11. The email read:

> My feelings today concerning my dad's sentencing is disturbing. I love him very much, but at the same time he does need punishment for what he did to me. But I don't feel he should get life in prison. He deserves at least ten to fifteen years.

Id.

On direct appeal, Petitioner raised several challenges with regard to his sentencing, including error by the trial court in admitting the email. Jones, 2016 WL 3621513, at *10. Although Petitioner phrases Claim 7, Sub-Claim of his Supplemental/Amended Petition differently, the Court finds that Petitioner exhausted this claim on direct appeal by raising the email issue as a sentencing error.

The TCCA began its review of Petitioner's claim of sentencing error by noting that, "[w]hen an accused challenges the length, manner, or range of sentence, this Court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness." Id. at *11. The TCCA noted that the party appealing the sentence has the burden of demonstrating

21

its impropriety. Id. (citations omitted). The TCCA then set forth the factors a trial court must consider in imposing a sentence:

> (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement by the defendant in his own behalf. T.C.A. § 40-35-210(b). In addition, the principles of sentencing provide that the sentence should be no greater that that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See T.C.A. § 40-35-103(2), (4).

Id. The TCCA then turned to the email. The TCCA observed that the trial court had determined that the email "could be from somebody else" (as opposed to the victim) but that the email was "asking for mercy for [the victim's] father" and the court would "take that for what it's worth." Id. (internal quotations omitted). The TCCA further observed that Petitioner did not object to the admission of the email. (Id.) Because Petitioner's failure to object waived the issue on appeal and Petitioner had not shown prejudice from the trial court's consideration of the email, the TCCA found that Petitioner was not entitled to relief. The TCCA emphasized that "trial counsel relied upon the email's request for leniency during his argument at the sentencing hearing, indicating that the failure to object may have been a tactical decision." (Id.)

Petitioner does not explain how the TCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Given that the request in the email asked for less prison time than what the trial court ultimately imposed, Petitioner cannot show prejudice, or that a substantial right was adversely

affected, by this alleged error, whether characterized as a "structural" or sentencing error. This claim is without merit and will be dismissed.

### 4. Claim 11: whether Petitioner's due process rights were violated by the trial court's alleged bias against him

In Claim 11, Petitioner asserts that "former Judge Casemoreland was bias (sic) because he called the petitioner 'a piece of shit' during the preliminary hearing[.]" (Doc. No. 161 at Page ID# 2208). It is clear from the record that Petitioner is referring to former state court Judge Casey Moreland.

Petitioner alleges that Judge Moreland presided over Petitioner's preliminary hearing on May 3, 2012 (during which he allegedly made the "piece of shit" comment) and Judge Blackburn presided over Petitioner's trial. (Doc. No. 161 at PageID# 2208). Petitioner has consistently alleged that he did not receive a fair trial in part because Judge Blackburn did not recuse herself after Judge Moreland made a derogatory comment about Petitioner during a previous hearing related to the case. The case number for the purported Moreland preliminary hearing does not match the case number for the convictions and sentence challenged by the instant federal habeas petition. Petitioner does not explain this discrepancy. As best the Court can discern, Petitioner may be confusing the term "bond proceedings" with "preliminary hearing," although this confusion does not entirely explain the discrepancy in state case numbers. Petitioner has attempted to clarify this confusion by explaining that he "got his dates wrong" and seeks the March 18, 2010 preliminary hearing transcript from former Judge Moreland's court. (See Doc. No. 297 at PageID# 6129).

In any event, it is undeniable that Petitioner has pursued, and state courts have considered to some extent,[6] judicial bias claims relating to Judge Moreland's alleged "piece of shit" comment.

---

[6] In his post-conviction petition, Petitioner pointed to Judge Moreland's alleged comment, arguing that trial counsel was ineffective by failing to provide Petitioner with a copy of the preliminary hearing transcript to prove that the trial

23

On direct appeal, Petitioner argued that Judge Blackburn should have recused in part because Petitioner had filed a federal lawsuit against her. In addressing Claim 1, Sub-Claim 1 herein, the Court recounted how, on direct appeal review, the TCCA found that "neither the trial court's adverse rulings nor the filing of a federal lawsuit against the judge are sufficient grounds to disqualify the judge." See supra at p. 17-18 (quoting Jones, 2016 WL 3621513, at *7-8). The Court noted that the TCCA had criticized Petitioner for waiting almost two years after the bond proceedings (in which Judge Moreland allegedly was involved) to file Petitioner's first motion to recuse, filing it the week before the scheduled trial date. See id. The Court additionally noted that, in denying relief, the TCCA found that Petitioner had failed to include the transcripts of the bond proceedings that formed the basis of his motions to recuse, precluding the court's review of the issue. Id. Because Claim 11 and Claim 1, Sub-Claim 1 overlap to some degree, arguably Petitioner has exhausted Claim 11 as well Claim 1, Sub-Claim 1.[7]

Of course, this Court does not condone what former Judge Moreland allegedly said. Nevertheless, the Court is not altogether convinced that Petitioner fully exhausted Claim 11. The Court is convinced, however, that it has afforded Petitioner a thorough review of his Judge Moreland allegations. Inasmuch as the TCCA's review of Petitioner's recusal claim exhausts

---

judge was biased. (Doc. No. 230, Exs. 1-2). Again, the Court notes that Petitioner points to a comment allegedly made by Judge Moreland in part to support his claim of judicial bias against Judge Blackburn.

During Petitioner's post-conviction hearing, trial counsel testified that he believed at one point he had reviewed the preliminary hearing transcript and, at Petitioner's request, gave his case file to him; thus, all materials related to Petitioner's case, including the preliminary hearing transcript, if it existed, would have been in the box he provided to Petitioner, although trial counsel could not be sure he ever ordered the transcript. (Doc. No. 179, Ex. 1 at PageID# 3657, 3662). The post-conviction court noted that, to date, no transcript of the preliminary hearing had been located. (Id. at PageID# 3662). However, the court found that, as it had noted from the bench during the post-conviction evidentiary hearing, "the General Sessions proceeding is not relevant to the Petitioner's post-conviction claims." (Id.) The court further found that Petitioner had not met his burden of establishing that trial counsel was ineffective by not providing Petitioner a hard copy of his preliminary hearing transcript, nor had he has shown any actual prejudice from the alleged deficiency. (Id. at PageID# 3662-63). The court denied petitioner's ineffective assistance of trial counsel claim based on the missing transcript. (Id. at PageID# 3663). Petitioner did not appeal this denial.

[7] Notably, the TCCA's opinion did not include any mention or analysis of Judge Moreland's alleged comment.

24

Claim 11 herein, the decision of the TCCA was not an unreasonable application of the facts or contrary to law. The claim will be dismissed.

### C. Procedurally Defaulted Claims

Respondent contends that Petitioner's remaining claims should be rejected because they are procedurally defaulted. (See Doc. No. 204 at PageID# 3917-22 (Claim 1, Sub-Claims 2, 4, 5, 6); 3922-23 (Claim 2); 3923-24 (Claim 3); 3925-26 (Claim 5); 3926-27 (Claim 6); 3928-29 (Claim 7, Sub-Claims 1-7, 9-10); 3929-3930 (Claim 8); 3930-31 (Claim 9); 3931-32 (Claim 10); 3933-34 (Claim 11); 3934-35 (Claim 12); and 3935-36 (Claim 13). Petitioner, however, maintains that he exhausted certain claims on direct appeal and/or post-conviction by filing pro se motions. Alternatively, Petitioner maintains that he can demonstrate cause to excuse his procedural defaults.

### 1. Whether Petitioner exhausted on direct appeal

Petitioner first asserts that he exhausted certain claims on direct appeal by filing pro se motions after the withdrawal of his appellate attorney. Additional procedural history is necessary here to fully understand Petitioner's argument.

Petitioner was represented by appointed counsel Elaine Heard on direct appeal. Ms. Heard filed Petitioner's appellate brief on December 11, 2015. (See Doc. No. 179, Ex. 15 at PageID# 3512). The Public Case History for Petitioner's direct appeal reflects that Petitioner filed a motion in the TCCA seeking to represent himself on direct appeal on April 22, 2016. The document received by the TCCA can be viewed through the TCCA's public database by clicking the "PDF" button next to the event dated April 22, 2016 entitled "Motion-Proceed Pro Se" by Petitioner. See https://pch.tncourts.gov/CaseDetails.aspx?id=63184&Party=True (last visited Jan. 17, 2023). The TCCA denied Petitioner's motion by order entered on the following day, stating that "[t]he Appellee is represented by appointed counsel. The record has been filed, briefing is complete, and

the appeal has been docketed for consideration by a panel of this Court." See id. (Order-Proceed Pro Se Denied"). The TCCA issued its decision on June 29, 2016. See Jones, 2016 WL 3621513, at *1. Ms. Heard filed a motion to withdraw on July 1, 2016. See https://pch.tncourts.gov/CaseDetails.aspx?id=63184&Party=True (last visited Jan. 17, 2023) ("Motion-Withdraw as Counsel" by "Elaine Heard (Attorney)"). The TCCA granted her motion by order entered on July 12, 2016. See id. ("Order-Withdrawal of Counsel Granted (Indigent)"). In that order, the TCCA stated:

> The Appellant has also filed a pro se motion requesting permission to represent himself on appeal. Because the Court hereby grants counsel's motion to withdraw, the Appellant is now proceeding pro se throughout the remainder of the appellate proceedings in this matter.

Id. Subsequently, Petitioner filed a pro se Motion to Set Aside Judgment on July 14, 2016, in which he contended that the record filed by Ms. Heard was incomplete. See id. ("Filing-Miscellaneous" by Petitioner). He then filed a "Motion to Re-Instate This Case & Motion to Stay Proceedings Temporarily and to File a 'Delayed' 'Amended' Response to Appellee, Pending the 'Grant' of Appellant's Pro Se Motion" on July 15, 2016. In that motion Petitioner sought a stay "on the review of the Appellant's brief and the Appellee's brief" as well as "all other motions and notice" until a complete record is submitted to the court. He asserted that he had received ineffective assistance of appellate counsel, and argued that the TCCA's decision incorrectly stated a material fact, was in conflict with a statute or prior decision, and overlooked a material fact and proposition of law. See id. ("Notice (Incoming)-Correspondence Received" by Petitioner).

On July 28, 2016, the TCCA entered an order in which it construed Petitioner's July 15, 2016 pleading as a petition for rehearing in accordance with Tennessee Rule of Appellate Procedure 39. See id. ("Order-Petition to Rehear Denied"). In that same order, the TCCA denied relief, finding that Petitioner had not supported his assertions with any facts or law. See id.

Petitioner, still proceeding pro se, sought discretionary review by the Tennessee Supreme Court. (Doc. No. 178, Ex. 18 at PageID# 3589-3597). In his application for discretionary review, Petitioner listed six issues: 1) whether the Equal Protection and Due Process Clauses "apply to the appellant"; 2) whether "the existence of a conflict" between the TCCA's decision denying Petitioner's appeal "and a decision of another appellate court on the same issue exist"; 3) whether a defendant who was diagnosed with depression after he committed a crime and was not taking medication should "be sentenced the same as regular inmates"; 4) whether the TCCA panel was partial and should have recused in Petitioner's appeal; 5) whether sexual battery and sexual battery by an authority figure are lesser included offenses for rape and aggravated rape; and 6) whether "the evidence in this case is sufficient to determine that the appellant was denied a fair trial, an impartial trial judge, ineffective assistance of trial and appellate counsel." (Id. at PageID# 3593).

Petitioner subsequently filed a "Motion to Take Judicial Notice of the Law" on August 4, 2016, in which he asked the TCCA to take judicial notice of certain "adjudicative facts" and cited various rules, cases, and constitutional provisions. Petitioner also filed a "Motion to Reduce, Vacate or Set Aside the Sentence Imposed" on August 11, 2016, in which he listed thirty issues for consideration by the court. (Doc. No. 270, Ex. 2 at PageID# 5825).

The TCCA entered an order on August 15, 2016, transferring Petitioner's two most recent filings to the Tennessee Supreme Court because the matter was now pending before the Tennessee Supreme Court. The Public Case History reflects that, on September 22, 2016, the Tennessee Supreme Court denied Petitioner's application to appeal and denied all motions filed by Petitioner. See https://pch.tncourts.gov/CaseDetails.aspx?id=67600&Party=True (last visited Jan. 17, 2023) ("Case Dispositional Decision-TRAP 11 Denied"). Specifically, the Court held: "Upon consideration of the application for permission to appeal of Cedric Jones and the record before us,

the application is denied. Furthermore, all of the motions filed by Cedric Jones are hereby denied."
Id.

The claims raised by Petitioner in his pro se Motion to Set Aside Judgment on July 14, 2016 and "Motion to Re-Instate This Case & Motion to Stay Proceedings Temporarily and to File a 'Delayed' 'Amended' Response to Appellee, Pending the 'Grant' of Appellant's Pro Se Motion" on July 15, 2016 were considered by the TCCA in its determination of whether Petitioner should be permitted a rehearing. And those issues (the record filed by Ms. Heard was incomplete; Petitioner received ineffective assistance of appellate counsel; and the TCCA's decision incorrectly stated a material fact, was in conflict with a statute or prior decision, and overlooked a material fact and proposition of law) are exhausted. However, Petitioner did not raise Claim 1, Sub-Claims 2, 4, 5, 6; Claims 2, 3, 4, 5, 6; Claim 7, Sub-Claims 1-7, 9-10; Claims 8, 9, 10; or Claim 12-13 in either of those Motions.

Petitioner presented six claims in his application for discretionary review to the Tennessee Supreme Court. However, he only raised two of those claims on direct appeal to the TCCA (judicial bias and sufficiency of the evidence). The four never-before raised claims—i.e., the claims he did not raise on direct appeal—are not fully exhausted. See Barrett v. Parris, No. 20-5202, 2020 WL 4875315, at * (6th Cir. July 20, 2020) (affirming the denial of a Certificate of Appealability and finding that "[a]lthough some [claims] were raised in his application for permission to appeal to the Tennessee Supreme Court, he did not give the state courts 'one full opportunity' to resolve the claims.") (citing O'Sullivan [v. Boerckel, 526 U.S. 838, 845 (1999)])); see also Hall v. Bell, No. 2:06-CV-56, 2010 WL 908933, at *51 (E.D. Tenn. Mar. 12, 2010) ("Petitioner's failure to raise this claim in the Court of Criminal Appeals was not procedurally cured by raising it thereafter in the state supreme court.")

The primary filing on which Petitioner relies to support the exhaustion of his claims is his forty-four page "Motion to Reduce, Vacate or Set Aside the Sentence Imposed" filed on August 11, 2016. (Doc. No. 270, Ex. 2 at PageID# 5811-5855). In this Motion, Petitioner lists thirty claims "presented for review."[8] (Id. at PageID# 5825). At least twenty-seven of the claims were not presented to the TCCA on direct appeal.[9] In other words, Petitioner raised those claims for the first time in a motion filed in Tennessee Supreme Court while it was considering Petitioner's application for discretionary review. Petitioner did not give the state courts "one full opportunity" to resolve those twenty-seven claims.

The issue is not that Petitioner filed his Motion pro se. At that time Petitioner was representing himself, a fact acknowledged by the TCCA. Neither is the issue that the Tennessee Supreme Court failed to address the merits of Petitioner's thirty claims in its order denying discretionary review and denying the Motion. Exhaustion does not depend on whether a state appellate court ignored in its opinion a federal constitutional claim squarely put before it.[10] Hall v. Bell, No. 2:06-CV-56, 2010 WL 908933, at *51 (E.D. Tenn. Mar. 12, 2010) (citing Smith v. Digmon, 434 U.S. 332, 333, 98 S. Ct. 597, 54 L.Ed.2d 582 (1978)). The issue here is that, as a precondition to an appellate court hearing a claim, the claim must be presented to the state appellate court "in a procedurally appropriate manner, i.e., in accord with that State's procedural rules." Id. (citing Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 103 L.Ed.2d 380 (1998) (holding

---

[8] For ease of reference, Petitioner's list of thirty claims is appended to this Memorandum Opinion. See infra at p. 43.

[9] Of the thirty claims, Petitioner raised claim 20 ("Whether the trial court was bias[ed] against the defendant") on direct appeal. Arguably, Petitioner raised claims 24 ("Whether the appellant kidnapped the alleged victim") and 27 ("Whether the appellant should be acquitted of all his charges") on direct appeal, if those pro se claims are construed as insufficiency of evidence claims.

[10] By citing Hall, the Court does not find that any of Petitioner's thirty claims were federal constitutional claims.

that a claim is not fairly presented if it is offered for the first and only time in a procedural context in which its merits will not be considered absent "special and important reasons therefor"))."

Any claims that Petitioner raised before the Tennessee Supreme Court without having first raised them before the TCCA were not presented to the Tennessee Supreme Court in a procedurally appropriate manner. See id. (citing O'Sullivan, 526 U.S. at 845-47 (for purposes of exhaustion, a claim must be offered to each court in the established state appellate review process); Castille, 489 U.S. at 351 (presenting a claim for the first time to the state's highest court for discretionary review does not exhaust it); cf. Adams v. Holland, 330 F.3d 398, 403 (6th Cir.2003) (finding that, under Tenn. S. Ct. Rule 39, raising a claim in the TCCA will suffice to exhaust it), cert. den., 541 U.S. 956, 124 S. Ct. 1654, 158 L.Ed.2d 392 (2004)). Thus, Claim 1, Sub-Claims 2, 4, 5, 6; Claims 2, 3, 4, 5, 6; Claim 7, Sub-Claims 1-7, 9-10; Claims 8, 9, 10; and Claims 12-13 were not exhausted by pro se motions filed by Petitioner on direct appeal.

### 2.    Whether Petitioner exhausted on post-conviction review

Petitioner also maintains that he exhausted several claims by including them in pro se motions filed in the post-conviction court. (Doc. No. 161 at PageID# 2156). However, as discussed supra at p. 3 n.2, to fully exhaust, Petitioner was required to appeal the post-conviction court's denial of those claims to the TCCA, which Petitioner did not do. Thus, Petitioner did not exhaust the following claims on post-conviction review by way of pro se motions: Claim 1, Sub-Claims 2, 4, 5, 6; Claims 2, 3, 4, 5, 6; Claim 7, Sub-Claims 1-7, 9-10; Claims 8, 9, 10; and Claims 12-13.

### 3. Whether Petitioner has presented cause to excuse his procedural defaults

The Court agrees with the State that the following claims are defaulted: Claim 1, Sub-Claims 2, 4, 5, 6; Claims 2, 3, 4, 5,[11] 6; Claim 7, Sub-Claims 1-7, 9-10; Claims 8, 9, 10; Claim 12-13. No state court remedies remain. See Tenn. Code Ann. § 40-30-102(c) (establishing Tennessee's "one-petition" limitation on post-conviction relief); Hodges v. Colson, 727 F.3d 517, 530 (6th Cir. 2013) (citing Fletcher v. Tenn., 951 S.W.2d 378, 380-81 (Tenn. 1997)) (explaining the three narrow circumstances in which a state prisoner may file a motion to reopen post-conviction proceedings, none of which apply to these claims).

Other than for Claims 6 and 11, Petitioner does not explain why the procedural default of any particular claim should be excused. Instead, Petitioner argues that the default of all unexhausted claims should be excused for five reasons: 1) the state courts did not consider Petitioner's pro se filings on direct appeal; 2) an objective factor external to the defense impeded counsel's efforts to exhaust; 3) an absence of available State corrective process or certain circumstances rendered such process ineffective; 4) Petitioner received ineffective assistance of counsel during "initial-review collateral proceedings"; and 5) Petitioner is actually innocent. (Doc. No. 161 at PageID# 2152-54, 2164 ("Memorandum of Law for Exhaustion Exceptions"), 2154-55 ("Memorandum of Law for Procedural Bar Exceptions"), 2156-62 ("Argument and Allegations for Any Failure to Exhaust Issues"), 2163-64 ("Argument and Allegations for Any Procedural Bar

---

[11] In his fifth claim, Petitioner alleges that the State committed prosecutorial misconduct. (Doc. No. 161 at PageID# 3925). Petitioner does not provide much detail supporting his claim, but he cites to Brady v. Maryland, 373 U.S. 83 (1963), which stands for the proposition that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Kyles v. Whitley, 514 U.S. 419, 432 (1995). While Petitioner exhausted a claim of prosecutorial conduct premised on the prosecutor's closing argument (see Jones, 2016 WL 3621513, at *9-10), Petitioner failed to exhaust a claim of prosecutorial conduct premised on the State violating Brady. Thus, Claim 5 is defaulted.

31

Issues")). As as explained below, Petitioner's allegations of cause are not sufficient to excuse the procedural default of his claims.

### a. The state courts did not consider Petitioner's pro se filings on direct appeal

First, to the extent that Petitioner argues that he was prevented from exhausting certain claims because state court clerks and judges thwarted his diligent efforts to represent himself on direct appeal, this argument fails.

Any pro se filings attempted by Petitioner while he was represented by counsel were appropriately not considered by the TCCA. That is because, under Tennessee law, "[i]t has long been the rule that an Appellant may not be represented by counsel in [the TCCA] and simultaneously proceed pro se." See Hill, 399 F. App'x 38, 44 (6th Cir. 2010) (citing State v. Porter, No. M2004-00444-CCA-R3-CD, 2005 WL 1378771, at *1 n.2 (Tenn. June 9, 2005); see also State v. Parsons, 437 S.W.3d 457, 478 (Tenn. Crim. App. 2011); State v. Cole, 629 S.W.2d 915, 917-18 (Tenn. Crim. App. 1981)).

After Petitioner's appellate lawyer (Ms. Heard) withdrew, the TCCA granted Petitioner's motion to represent himself and, as best the Court can discern from the record and from the Public Case History available online, accepted and considered all of Petitioner's pro se filings. See https://pch.tncourts.gov/CaseDetails.aspx?id=63184&Party=True (last visited Jan. 17, 2023). True, once Petitioner filed his application for permission to appeal to the Tennessee Supreme Court, the TCCA transferred any pro se filings by Petitioner to the higher court. The TCCA's action was proper, giving jurisdictional considerations. The Tennessee Supreme Court ruled on Petitioner's pro se application and motions. See https://pch.tncourts.gov/CaseDetails.aspx?id=67600&Party=True (last visited Jan. 17, 2023). The record and publicly available case history reveals that Petitioner was not prevented from

exhausting certain claims because the TCCA denied his attempts to file several pro se filings while he was represented by appointed counsel.

### b. An objective factor external to the defense impeded counsel's efforts to exhaust

Second, Petitioner broadly asserts that he was not required to exhaust all or certain claims[12] because "government interference rendered procedural compliance impracticable . . . ." (Doc. No. 161 at PageID# 2163). Petitioner identifies state court judge Cheryl Blackburn's refusal to subpoena Petitioner's preliminary hearing transcript as "government interference" and alleges that she "infect[ed] his entire trial with error of constitutional dimensions", thereby removing Petitioner's requirement to exhaust. (Id.) (internal quotation marks omitted).

A habeas petitioner can establish cause to excuse procedural default by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Davila v. Davis, __ U.S. __, 137 S. Ct. 2056, 2065 (2017) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it 'cannot fairly be attributed to' the" petitioner. Id. (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). But a "federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure." Shahideh v. McKee, 488 F. App'x 963, 965 (6th Cir. 2012) (quoting Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987)).

Petitioner correctly points out that, on direct appeal, the TCCA rejected Petitioner's judicial bias claim because he failed to submit the preliminary hearing transcript. However, the TCCA offered two other independent bases for rejecting the claim, as discussed supra at pp. 17-18. This issue decided by the state court is a question of state law. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct.

---

[12] Petitioner specifically makes this argument with respect to Claim 11 but, because he also argues broadly that his default of all unexhausted claims should be excused for the same five reasons, the Court considers the argument with respect to all unexhausted claims.

App. 1998). ("Our '[c]ourts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'"); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); Tenn. R. App. P. 24(b)) (noting that, under Tennessee law, where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue).

The state courts' resolution of the state-law question controls here. See Shahideh, 488 F. App'x 963, 965. Petitioner cannot use the framework of a "cause" analysis to evade binding precedent that requires a federal habeas court to "accept as valid a state court's interpretation of state law and rules of practice of that state." See Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003) (citing Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986)); Lint v. Prelesnik, 542 F. App'x 472, 480 (6th Cir. 2013) (explaining that a state court's reasoning on a state law question is "largely immaterial," so long as the court actually made a ruling). Thus, the state courts' denial of Petitioner's judicial bias claim on direct appeal in part due to the missing preliminary hearing transcript does not excuse the default of Petitioner's claims. Petitioner has not shown that Judge Blackburn's alleged interference "rendered procedural compliance impracticable" for Claim 11[13] or any other claim.

---

[13] The Court specifically addresses whether Petitioner has exhausted Claim 11 herein at Section IV.B.4. See supra at pp. 23-24.

### c. An absence of available State corrective process or certain circumstances render such process ineffective

Third, Petitioner argues that exhaustion was not required because "there is/was an absence of available State corrective process or certain circumstances render such process ineffective to protect the [petitioner's] rights." (Doc. No. 161 at PageID# 2156) (internal quotation marked omitted). Petitioner insists that "further state litigation would [have] be[en] futile" because the highest state court recently rejected claims identical to his defaulted claims. (Doc. No. 161 at PageID# 2157, 2161). And according to Petitioner, he is not required to file "repetitive petitions" under Wilwording v. Swenson, 404 U.S. 249, 251 (1971). (Id.)

Petitioner's reliance on Wilwording is misplaced. The 1971 Supreme Court's decision in Wilwording was superseded by statute as discussed in Woodford v. Ngo, 548 US. 81 (2006). "Before 1980, prisoners asserting constitutional claims had no obligation to exhaust administrative remedies." Id. at 84. After the enactment of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prisoners now must exhaust all available remedies. Id. Petitioner is not exempted from the exhaustion requirement simply because his state's highest court has recently rejected claims identical to his claims.

Moreover, Petitioner's argument seemingly invokes a statutory exception to the exhaustion requirement, so it is misplaced in the procedural default context. That is, a habeas petitioner is not required to exhaust state court remedies if "there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(B)(i). "Exhaustion and procedural default, however, are distinct concepts." Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006). Where, as here, "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." Id. (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)). Therefore, Petitioner cannot rely on an exhaustion

35

exception as cause to excuse his default. See <u>Smith v. Warden, Toledo Corr. Inst.</u>, 780 F. App'x 208, 225 n.2 (6th Cir. 2019) (rejecting habeas petitioner's request to excuse procedural default based on statutory exhaustion exceptions). Petitioner's third allegation of cause fails.

### d. Ineffective assistance of counsel as cause

"Ineffective assistance of counsel can constitute cause for a procedural default." <u>Hodges v. Colson</u>, 727 F.3d 517, 530 (6th Cir. 2013) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 492 (1986)). Additionally, a habeas petitioner may demonstrate cause for a procedurally defaulted ineffective-assistance claim that is, itself, an allegation of cause for another claim. <u>Edwards v. MacLaren</u>, No. 17-2455, 2018 WL 6436389, at *3 (6th Cir. July 12, 2018) (quoting <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000)) ("When 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim [is] itself . . . procedurally defaulted[,] . . . that procedural default may . . . itself be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim.'"). In other words, "the procedural default of [a] cause ground [can] itself be excused." <u>Williams v. Lazaroff</u>, 648 F. App'x 548, 554 (6th Cir. 2016).

Here, Petitioner faults trial counsel for not obtaining, or for mislocating, the preliminary hearing transcript that Petitioner believes supports his judicial bias claim. Petitioner alleges that that he could not exhaust his claim of ineffectiveness of trial counsel because post-conviction counsel was ineffective by "holding on to [Petitioner's] legal files" which "denied [Petitioner] the opportunity to present his claim . . . ." (Doc. No. 161 at PageID# 2157). Thus, it appears that Petitioner is attempting to rely on the alleged ineffective assistance of post-conviction counsel to establish the cause and prejudice necessary to excuse the procedural default of his claim that trial counsel was ineffective by failing to procure the transcript and use it to support Petitioner's judicial bias claim. See Claim 6, Sub-Claim 6.

Martinez permits a petitioner to establish cause to excuse a procedural default of an ineffective assistance of trial counsel claim by showing that he received ineffective assistance by post-conviction counsel. See 566 U.S. at 9. This holding, however, does not dispense with the "actual prejudice" requirement established by the Supreme Court in Coleman. 501 U.S. at 750. "That is, the petitioner must show both that his post-conviction counsel's performance was constitutionally deficient and that the petitioner was prejudiced by the deficiency." Thorne v. Hollway, No. 3:14-CV-0695, 2014 WL 4411680, at *22 (M.D. Tenn. Sept. 8, 2014) (quoting Clabourne v. Ryan, 745 F.3d 362, 376 (9th Cir. 2014)).

The Sixth Circuit has directed that a district court considering ineffective assistance of counsel claims under Martinez must first address whether the petitioner can demonstrate "(1) the absence or ineffective assistance of his post-conviction counsel and (2) the 'substantial' nature of his underlying [ineffective assistance of trial counsel claims]." Woolbright v. Crews, 791 F.3d 628, 637 (6th Cir. 2015). If the petitioner demonstrates these first two elements, the petitioner has established cause to excuse the procedural default, and the district court must next determine whether the petitioner can establish prejudice from the alleged ineffective assistance of trial counsel. Id. If the petitioner successfully establishes cause and prejudice, the final step is for the district court to evaluate the underlying ineffective assistance of trial counsel claims on the merits. Atkins v. Holloway, 792 F.3d 654, 659-60 (6th Cir. 2015).

As part of showing a substantial claim of ineffective assistance of trial counsel, the petitioner must prove prejudice under Strickland. See McGuire v. Warden, Chillicothe Corr. Inst., 738 F.3d 741, 752 (6th Cir. 2013) ("To be successful under Trevino, [petitioner] must show a 'substantial' claim of ineffective assistance, and this requirement applies as well to the prejudice portion of the ineffective assistance claim." (internal citations omitted)). Under Strickland, a

petitioner can prove prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 694.

In many habeas cases seeking to overcome procedural default under Martinez, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was "substantial" enough to satisfy the "actual prejudice" prong of Coleman. If the claim is not substantial, the reviewing court would have no need to consider whether the petitioner has established ineffective assistance of post-conviction counsel. Thorne, 2014 WL 4411680, at *23. The Supreme Court has defined this "substantial" showing as requiring a petitioner to show that the claim has some merit. Martinez, 566 U.S. at 12-13 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). The threshold inquiry at this stage "does not require full consideration of the factual or legal basis adduced in support of the claims"; rather, the court is required to engage in a preliminary, though not definite, consideration of the two-step framework mandated by Strickland. Miller-El, 537 U.S. at 336, 338.

Here, Petitioner's underlying claim is that trial counsel was ineffective for failing to obtain or retain a transcript that supports Petitioner's judicial bias claim. As noted above, on direct appeal, the TCCA rejected Petitioner's judicial bias claim only partially because he failed to submit the preliminary hearing transcript; the court offered two other independent bases for rejecting the claim. Thus, even if trial counsel had submitted the transcript on direct appeal, it is unlikely that the appellate court would have reached a different result on Petitioner's judicial bias claim. Petitioner therefore cannot establish that his underlying ineffective assistance of trial counsel claim (Claim 6, Sub-Claim 6) is substantial and, consequently, Petitioner cannot establish cause to excuse the procedural default of his judicial bias claim.

38

Petitioner does not explain how the ineffectiveness of counsel serves as cause to excuse the procedural default of his other claims. His general allegations of cause are insufficient.

### e.    Actual innocence

Finally, Petitioner also attempts to establish cause for his procedural defaults by asserting actual innocence. Specifically, Petitioner asserts that he is actually innocent of aggravated kidnapping because he was not "armed with a weapon" at the time of the crime. (Doc. No. 161 at PageID# 2164). He alleges that the victim provided conflicting statements regarding whether Petitioner's firearm was "on his shelf in his studio" at the time he and the victim arrived (id. at PageID# 2189) or in Petitioner's car when he picked up the victim. (Id. citing Doc. No. 178, Attach. 8 at PageID# 2986-2988).

Aggravated kidnapping is defined as false imprisonment committed while the defendant is in possession of a deadly weapon or threatens use of a deadly weapon. Tenn. Code Ann. § 39-13-304(a)(5). False imprisonment is defined as knowingly removing or confining another unlawfully so as to interfere substantially with the other's liberty. Tenn. Code Ann. § 39-13-302(a). The removal or confinement of the victim must exceed that which is necessary to accomplish an accompanying felony, such as rape. State v. White, 362 S.W.3d 559, 578 (Tenn. 2012).

A claim of actual innocence is not itself a constitutional claim but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."). The Supreme Court has emphasized "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence,

no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). The actual innocence exception is very narrow in scope and requires proof of factual innocence, not just legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." Schlup, 513 U.S. at 324.

Here, Petitioner does not support his claim of actual innocence with any new evidence. On direct appeal, with respect to the aggravated rape charges, he argued that the State failed to prove that he possessed a deadly weapon or threatened to use a deadly weapon as is required by Tenn. Code Ann. § 39-13-304(a)(5) because he never pointed the gun at the victim. Jones, 2016 WL 3621513, at *6. Petitioner now argues, with respect to the aggravated kidnapping charge, that the victim provided conflicting testimony regarding at what point on the date of the crimes Petitioner had the gun with him, which shows he is actually innocent of aggravated kidnapping.

Discussing Petitioner's aggravated rape charges, the TCCA explained, "[a]s for the element of being armed with a weapon, this Court has held that this element is satisfied when a defendant has a weapon in his actual or constructive possession." Jones, 2016 WL 3621513, at *6 (citing State v. Moore, 703 S.W.2d 183, 186 (Tenn. Crim. App. 1985)). In other words, Tennessee law does not require that a defendant employ the weapon or directly threaten the victim with the weapon. The evidence showed that Petitioner had the gun in his possession, showed it to the victim, placed it in her lap so that she would know it was real, and threatened to use the gun on himself several times both before and after the rapes. See id. As the TCCA found, "Defendant was clearly

armed with a weapon. The evidence was crushingly sufficient to sustain each count of aggravated rape." Id.

With respect to Petitioner's aggravated kidnapping charge, on direct appeal, Petitioner argued that the victim was not confined and therefore the State had failed to prove that she was falsely imprisoned as is required under Tenn. Code. Ann. § 39-13-304(a)(5). Jones, 2016 WL 3621513, at *6. Here, however, Petitioner appears to argue that he is actually innocent of aggravated kidnapping because he did not falsely imprison the victim while he was in possession of a deadly weapon or by threatening the use of a deadly weapon. But as the TCCA explained, "Defendant was in possession of a deadly weapon while he confined the victim to the storage unit." Id. Petitioner's argument that the victim gave conflicting statements regarding whether Petitioner's gun was with him at the time she got into car or only after he retrieved the gun from a shelf in his storage unit does not support a showing of actual innocence of the crime of aggravated kidnapping. Petitioner does not argue that he did not possess a gun while he unlawfully confined the victim to the storage unit, substantially interfering with her liberty. Therefore, Petitioner has not met his burden and has failed to attain the actual innocence "gateway" through which to excuse his procedural default.

In summary, Claim 1, Sub-Claims 2, 4, 5, 6; Claims 2, 3, 4, 5, 6; Claim 7, Sub-Claims 1-7, 9-10; Claims 8, 9, 10; and Claims 12-13 are procedurally defaulted, and Petitioner has not established cause and prejudice to excuse the default. Neither has he proven that he is actually innocent of the crimes of which he was convicted. These claims will be dismissed.

## V.   Conclusion

For the reasons set forth herein, the petition filed by Cedric Jones seeking relief under 28 U.S.C. § 2254 will be denied, and this action will be dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller–El, 537 U.S. at 327. The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Because jurists of reason would not disagree with the resolution of Petitioner's claims, the court will deny a COA.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

# Addendum

1. Whether the trial court abused her discretion against the defendant
2. Whether the trial court committed a plaint errors against the appellant that is "clear" and "obvious" which affected the appellant's substantial rights.
3. Whether the prosecutor committed official misconduct against the defendant
4. Whether the appellant should be granted a new trial, new judge and change of venue
5. Whether the trial court is liable for (a) acting without jurisdiction in a matter and (b) committing acts that is clearly unlawful; including fraud. For jurisdiction, the trial court must prove she had jurisdiction.
6. Whether the trial court breached her Oath of office (Tenn. CODE. ANN. 17-2-120)
7. Whether former counsel (Jefre Goldtrap) was ineffective in his assistance to the defendant prior to his trial
8. Whether the trial counsel was ineffective in his assistance to the defendant
9. Whether the trial judge had legal and proper jurisdiction to hear the appellant's case
10. Whether the trial judge violated the following under the Tennessee Code of Judicial Conduct:

rule 1.1 (compliance with the law) under Tennessee Code of Judicial Conduct
rule 1.3 (avoiding abuse of the prestige of Judicial office) under the Tennessee Code of Judicial Conduct
rule 2.2 (Impartiality and fairness) under the Tennessee Code of Judicial Conduct
rule 2.3 (bias, prejudice, and harassment) under the Tennessee Code of Judicial Conduct
rule 2.5 (competence, diligence, and cooperation) under the Tennessee Code of Judicial Conduct
rule 2.7 (responsibility to decide) under the Tennessee Code of Judicial Conduct
rule 2.8 (decorum, demeanor, and communication with jurors) under the Tennessee Code of Judicial Conduct
rule 2.11 (disqualification) under the Tennessee Code of Judicial Conduct
rule 2.13 (administration responsibilities) under the Tennessee Code of Judicial Conduct
rule 2.15 (responding to judicial and lawyer misconduct) under the Tennessee Code of Judicial Conduct
rule 3.1 (financial business, or remunerative activities) under the Tennessee Code of Judicial Conduct

11. Whether the trial court committed official oppression against the appellant
12. Whether the trial court committed official misconduct against the appellant
13. Whether the trial court committed perjury while acting under color of law
14. Whether the trial court committed criminal conspiracy against the appellant
15. Whether the trial court committed fraud upon the court while acting under color of law
16. Whether the trial court compiled an illegal constituted jury against the appellant
17. Whether the trial court erred in allowing a "non-expert" testify against the appellant at his trial
18. Whether the indictment was defective
19. Whether the indictment was returned by an improperly constituted grand jury
20. Whether the trial court was bias against the defendant
21. Whether trial counsel conspired with the prosecutor and the trial judge to convict the appellant
22. Whether the defendant was entitled to an expert witness prior to trial
23. Whether the appellant was entitled to expert assistance in the field of DNA analysis
24. Whether the appellant kidnapped the alleged victim
25. Whether the appellant's due process rights were violated
26. Whether the trial judge made the appellant's judgment final prior to his motion for new trial hearing
27. Whether the appellant should be acquitted of all his charges
28. Whether the state's failure to establish parental custody of the alleged victim was error
29. Whether the appellant's speedy trial rights have been violated
30. Whether double jeopardy attaches to the appellant's case

43